UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD CARLOS DIAZ, SR.,<br><br>                                    Plaintiff,<br><br>v.<br><br>DOCTOR NEWTON; OFFICER LAXAMANNA<br><br>                                    Defendants. | Consolidated Civil Case No.:<br>16cv2244 DMS (BGS)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND**<br><br>[ECF Nos. 21, 25, 29, 31, 33, 43] |

Plaintiff Ronald Carlos Diaz, Sr. ("Plaintiff"), a prisoner proceeding *pro se* and *in forma pauperis* ("IFP"), has filed a Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff's Complaint asserts claims for deliberate indifference to medical need for incidents occurring while he was incarcerated at the Richard J. Donovan Correctional Facility ("RJD") located in San Diego, California. (*Id.*)

On November 2, 2016, the Honorable Dana M. Sabraw dismissed each defendant except Defendant Dr. Sidighi in an initial screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A. Plaintiff has filed a Motion for Leave to Amend as to dismissed Defendants Officer Laxamanna and Dr. Newton. (ECF No. 21.) Defendant Dr. Sidighi has filed a Motion to Dismiss for failure to state a claim upon which relief can be granted. (ECF No.

25.) Both motions have been referred to the undersigned Magistrate Judge for a Report and Recommendation ("R&R"). For the reasons set forth below, the Court **RECOMMENDS** that Dr. Sidighi's Motion to Dismiss be **DENIED** and Plaintiff's Motion for Leave to Amend be **GRANTED in part and DENIED in part.**

## BACKGROUND

## I. Procedural Background

### A. *Sua Sponte* Screening

Plaintiff filed his Complaint against Defendants California Correctional Health Care Services, Dr. Sidighi, Dr. Newton, Officer Laxamanna, and Dr. Cheryl Schutt alleging violations of the Eighth Amendment based on denial of medical care. (ECF No. 1.) Judge Sabraw granted Plaintiff's Motion to Proceed IFP, however, the Prison Litigation Reform Act of 1995 ("PLRA") requires courts to review and *sua sponte* dismiss any complaint, or any portion of a complaint, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Officer Laxamanna and Dr. Schutt were dismissed on screening for failing to state a plausible claim for relief. (ECF No. 14.) Defendant California Correctional Health Care Services was also dismissed *sua sponte* for failing to state a claim and for seeking damages against a defendant who is immune. (*Id*. at 10.) As to Dr. Newton, Plaintiff's Complaint was found devoid of any factual allegations and he was dismissed. (ECF No. 14 at 8.)

On January 18, 2017, Plaintiff filed a document captioned "Amended Complaint," however, the Court has construed it as a Motion for Leave to Amend based on the substance of the filing.[1] (ECF No. 21.) An Opposition was filed on March 8, 2017.[2]

---

[1] It states in the first paragraph that Plaintiff is seeking permission to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a) and goes on to provide additional allegations as to Dr. Newton and Officer Laxamanna.

[2] It is titled "Defendant's Opposition to Plaintiff's Motion for Reconsideration" but as discussed earlier the Court construes Plaintiff's Motion as a request for leave to amend

(ECF No. 27.)  On May 22, 2017, Plaintiff filed a request for an extension of time to file an optional reply brief in support of his request for leave to amend that was granted on June 5, 2017.  (ECF Nos. 36, 38.)  With the extension, Plaintiff's reply brief was due June 19, 2017.  (ECF No. 39.)  He did not file the Reply brief, however, on June 5, 2017, Plaintiff filed an additional request for leave to amend.  (ECF No. 41.)  On July 28, 2017, Plaintiff filed a Notice of Change of Address that includes an explanation why he failed to meet the June 19, 2017 deadline.  (ECF No. 43.)  He requests the Court to either issue an order allowing him to file the Reply[3] by a later date or to consider the additional facts he alleges as to the dismissed defendants in ruling on the Motion for Leave to Amend. (*Id.* at 4.)  The Court **GRANTS** the latter request because, as explained below, the Court has considered all his proposed allegations, including those in the June 5, 2017 and July 27, 2017 filings, in considering whether leave to amend should be granted.  Additionally, as noted in the Order granting the extension to June 19, 2017, and as evident from the analysis below, the optional Reply brief is unnecessary.  (ECF No. 39.)

Dr. Sidighi, the only defendant Plaintiff was allowed to proceed against, filed a Motion to Dismiss on February 13, 2017. (ECF No. 25). Plaintiff filed an Opposition on March 6, 2017.  (ECF No. 29.)  The Court first considers Dr. Sidighi's Motion to Dismiss and then Plaintiff's Motion for Leave to Amend.

## II.    Factual Background in Plaintiff's Complaint

According to the Complaint, Plaintiff took some sleeping medication at night and woke up with an erection that he thought was "normal" on Tuesday, July 3rd or

_____

based on additional allegations, not as a request for reconsideration of the screening Order.  Dismissal of claims pursuant to a screening order does not preclude leave to amend.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding leave to amend may be granted following dismissal pursuant to § 1915(e)).

[3] Plaintiff refers to the filing as an Answer, however, given the Court has construed it as a request for leave to amend and an opposition has been filed, an additional brief on his motion would be a reply brief.

Wednesday, July 4th. (ECF No. 1 at 10.[4]) The erection eventually "went down to a half erection but became painful off and on since the night before." (*Id.*) Plaintiff submitted a Health Care Services Request Form ("Medical Slip") on July 4th or 5th.[5] While waiting to be escorted to the law library the pain in his lower abdominal was becoming more extreme. (*Id.*) Plaintiff's mental health doctor, "Dr. Duke," walked by Plaintiff and noticed that he was in pain. (*Id.*) When Dr. Duke approached Plaintiff, Plaintiff described his symptoms and told Dr. Duke that he submitted a sick call slip "last night." (*Id.* at 11.) Plaintiff alleges that Dr. Duke stated that Plaintiff's situation was extremely serious and could cause lifetime permanent injury if not treated immediately. (*Id.*)

According to Plaintiff, Dr. Duke returned and informed Plaintiff that he reported the incident to the nurses and that the nurses "need to A.S.A.P. send [Plaintiff] to emergency room." (*Id.*) Plaintiff went to the law library to wait for the nurses. (*Id.*) While there, Plaintiff alleges the pain became so bad that he told Officer Laxamanna to call a paramedic because he needed to be sent to an outside hospital emergency room. (*Id.* at 13.) Officer Laxamanna told Plaintiff he was escorting him back to his cell and would ask the unit nurse to see him. (*Id.*) While escorting Plaintiff back to his cell Plaintiff and Officer Laxamanna encountered the medical unit officer, Ms. Alvarado, who indicated she had gone to his cell looking for him because he was on the nurse's list to be seen. (*Id.*) However, she also indicated the nurse had gone somewhere so Plaintiff was

---

[4] All references to page numbers in this R&R refer to the CM/ECF electronically-assigned pagination unless otherwise noted.

[5] The date on the Medical Slip, attached to Plaintiff's Complaint as Exhibit B is July 8, 2012. (ECF No. 1 at 20.) This would appear to be after all the events described in Plaintiff's Complaint have taken place. However, Plaintiff indicates that he had no calendar because he was in the administrative segregation unit and acknowledges his dates may not be exactly right. (ECF No. 1 at 10; ECF 41 at 5.) This is apparent from the allegations of the Complaint as well. In a number of places, he notes something may have happened on one day or the next. Because he refers to the attached Medical Slip, the Court assumes the July 8, 2012 Medical Slip is the one he alleges he submitted on July 4th or 5th.

placed back in his cell until the nurse returned. (*Id.*) When the nurse returned, another officer escorted Plaintiff to the nurses' station where he was seen by Nurse Sanchez. (*Id.*) Plaintiff alleges that he told Nurse Sanchez that he needed to be sent to an outside hospital emergency room as the pain was unbearable. (*Id.* at 14.) Nurse Sanchez stated that she did not have authorization to make that determination and told Plaintiff that she would "call the (prison doctor) to notify him of the emergency and situation," "that the prison doctors have that authorization," and she would "call and see what they say." (*Id.*) Plaintiff further alleges that when Nurse Sanchez "called and spoke to . . . Dr. Sidighi" he told Nurse Sanchez "for [Plaintiff[ to wait 3 more days then he will see me an determine whether to send me to [the] E.R." (*Id.*)

Later that day, at approximately 4:30 p.m., Plaintiff was escorted to the emergency intake where he states that he was examined by three nurses.[6] (*Id.* at 15.) Plaintiff alleges that the nurses in the emergency intake did not have authorization to send him to an outside medical facility and that they reiterated that Dr. Sidighi indicated he would have to wait three days to be seen by Dr. Sidighi. (*Id.*) Plaintiff's Complaint states that the pain then became so bad that he wanted to commit suicide, resulting in him being sent to "crisis bed." (*Id.*) The following morning, Plaintiff was seen by mental health doctors and reported his condition to them. (*Id.*) Plaintiff alleges that the mental health doctors then contacted Dr. Sidighi to notify him of the need to immediately send Plaintiff to the emergency room. (*Id.* at 15-16.) Plaintiff alleges that only then did Dr. Sidighi see Plaintiff. (*Id.* at 16.)

Plaintiff's Complaint alleges that after this examination, Dr. Sidighi "refused" to send Plaintiff to the emergency room, but then agreed to send him to the emergency room after Plaintiff threatened to sue him. (*Id.*) Plaintiff alleges that he had a bedside surgery at the hospital and was then transported back to prison. (*Id.* at 16.) Plaintiff's problem

---

[6] As explained in Plaintiff's Motion for Leave to Amend, Plaintiff now alleges one of the three nurses is Dr. Newton. (ECF No. 21 at 3.)

returned the following morning and Dr. Sidighi was notified. (*Id.*) Plaintiff alleges Dr. Sidighi did not want to send him back to the emergency room and he was only sent back the second time after the mental health doctors again intervened. (*Id.*) Upon arrival at the hospital, Plaintiff received an additional bedside surgery. (*Id.* at 17.) He alleges that this second surgery failed and Plaintiff was then rushed into the operating room where doctors performed a third surgical operation. (*Id.*) He was examined the following day and received a fourth surgery before being returned to the prison. (*Id.*) Plaintiff vaguely alleges that he has suffered permanent injury.[7] (*Id.* at 8.)

## DISCUSSION

### I. Motion to Dismiss

#### A. Rule 12(b)(6)

Pursuant to Federal Rules of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. To survive a motion to dismiss, a complaint must contain sufficient

---

[7] Other filings by Plaintiff make clear that he is alleging he is no longer able to attain a natural erection as a result of his injury, however, in considering the Motion to Dismiss, the Court's review is limited to the Complaint and exhibits attached to the Complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citing *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)); *Wilhelm*, 608 F.3d at 1116 n. 1. "[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss," however, the courts may consider these allegations in assessing whether to grant leave to amend. *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *Broam*, 320 F.3d at 1026 n.2 (citing *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001)).

factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"For the purposes of a motion to dismiss, we construe the pleading in the light most favorable to the party opposing the motion." *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). Additionally, allegations in *pro se* complaints "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). "*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings; accordingly, we continue to construe *pro se* filings liberally when evaluating them under *Iqbal*." *Hebbe*, 627 F.3d at 342. The Courts "'obligation' remains, 'where the petitioner is *pro se,* particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Id*. (quoting *Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc)).

**B.    Eighth Amendment Claim Against Dr. Sidighi**

To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Shah v. Cnty. of Los Angeles*, 797 F.2d 743, 746 (9th Cir. 1986). Only the second element is at issue in this Motion.

Plaintiff asserts a constitutional violation under the Eighth Amendment. "[T]o state a cognizable [Eighth Amendment] claim [based on medical care], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Plaintiff alleges Dr. Sidighi was deliberately indifferent to his serious medical condition, priapism, by denying him medical treatment for his condition. (ECF at 15.)

"A public official's 'deliberate indifference to a prisoner's serious illness or injury' violates the Eighth Amendment ban against cruel punishment." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (citing *Estelle*, 429 U.S. at 97). "To establish an Eighth Amendment violation, a prisoner 'must satisfy both the objective and subjective components of a two-part test.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)).

### 1. Objective Prong

"To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). "Indications that a plaintiff has a serious medical need include 'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)).

Here, Plaintiff has pled the existence of a serious medical need.[8] He has alleged a condition that significantly affects an individual's daily activities and a condition that a reasonable doctor or patient would find important and worthy of treatment. Plaintiff asserts that his condition became so unbearably painful that he could not focus on what he was doing, he was barely able to walk, and that the condition ultimately led to his wanting to commit suicide and being sent to "crisis bed." (ECF No. 1 at 13-15.) Plaintiff's allegations concerning the reaction of the doctors in the emergency room and

---

[8] Although not binding on this Court, another district court faced with similar facts at the summary judgment stage found priapism a serious medical condition based, in part, on it causing significant pain and warranting the prisoner being sent to the hospital. *Withers v. Carter*, Case No. 13 C 1643, 2015 WL 5920658, at *3 (N.D. Ill. Oct. 8, 2015) (finding objective element met because the "record show[ed] that the priapism caused plaintiff significant pain, and defendants deemed the condition serious enough to warrant sending him to a hospital").

the treatment he required also indicate he was suffering from a condition a reasonable doctor would find important and worthy of treatment. Plaintiff alleges that doctors at the hospital were extremely upset and told him the prison doctor should have sent Plaintiff to see them immediately. (*Id.* at 16.) Plaintiff also underwent four surgeries.[9] (*Id.* at 16-17.)

### 2. Subjective Prong

"A prison official is deliberately indifferent under the subjective element of the test only if the official "knows of and disregards an excessive risk to inmate health and safety." *Colwell*, 763 F.3d at 1066 (quoting *Toguchi*, 391 F.3d at 1057). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Toguchi*, 391 F.3d at 1057.

Dr. Sidighi argues three bases for dismissal of the claim against him: (1) that, based on Plaintiff's Medical Slip, attached to the Complaint, Dr. Sidighi was not personally involved in the alleged violation of Plaintiff's rights; (2) that the allegations of the Complaint do not show that Dr. Sidighi was aware of a serious risk of harm to Plaintiff; and (3) Dr. Sidighi did not deny or delay care for Plaintiff. (Opp'n at 5-8.)

In arguing that he must be dismissed because he was not personally involved in denying or delaying Plaintiff medical care, Dr. Sidighi relies on Exhibit B to Plaintiff's

---

[9] Plaintiff describes two bedside surgeries and two that seem to have been performed in an operating room, although it is not entirely clear. (ECF No. 1 at 16-17.) It does appear that at least one required anesthesia. (*Id.* at 17.)

Complaint, the Medical Slip submitted by Plaintiff. (ECF No. 1 at 20.) The Medical Slip consists of a section that Plaintiff has completed that describes his condition — painful erection that has lasted days — followed by a section with notes on his condition that appears to have been completed by Nurse Sanchez. (*Id.*)[10] Dr. Sidighi accurately points out that he is not identified as being consulted or providing any care to Plaintiff on the Medical Slip and that two other doctors are noted as having been consulted on his condition. From this, Dr. Sidighi asks the Court infer that he was not involved at all in denying or delaying care to Plaintiff. This is not a completely unreasonable inference and it seems possible that Plaintiff has simply named the wrong prison doctor as a defendant. While the Court can and does consider the Medical Slip because it is attached to Plaintiff's Complaint, the Court cannot find at this stage that the Medical Slip negates all of Plaintiff's specific allegations as to Dr. Sidighi.

When Plaintiff was eventually seen by Nurse Sanchez, he alleges she told him she did not have authorization to send him to the emergency room as he requested, and that she would "call the (Prison Doctor) to notify him of the emergency and situation." (*Id.* at 14.) Plaintiff further alleges that Nurse Sanchez called and spoke with Dr. Sidighi and he told her that Plaintiff would have to wait three days to be seen. (*Id.*). Plaintiff alleges that later that day while sitting in his cell in extreme pain, he was escorted by an officer to the prison's "emergency intake where he was seen by three unnamed nurses." The nurses stated they could not send Plaintiff to an outside facility and Dr. Sidighi would see Plaintiff in three days. (*Id.* at 15.) Plaintiff alleges that at this point the pain became so bad that he wanted to commit suicide which resulted in his being sent to "crisis bed." (*Id.*) The following morning, Plaintiff alleges he was seen by his mental health doctors who then contacted Dr. Sidighi to notify him that Plaintiff needed to be sent to the

---

[10] As noted throughout this Order, the dates alleged by Plaintiff and the dates on the Medical Slip do not appear to match up. Plaintiff's dates seem to be earlier than those reflected on the Medical Slip.

emergency room immediately. (*Id.*) A short time later, Dr. Sidighi arrived and examined Plaintiff. (*Id.* at 17.) Although Dr. Sidighi initially still refused to send Plaintiff to the emergency room, Plaintiff alleges he did issue an order to have him taken to the emergency room where he underwent the first of four "surgeries" to address his condition. (*Id.*) The Court cannot find, as Dr. Sidighi argues, that he was not involved in the denial of medical care for a serious medical condition when Plaintiff alleges that Dr. Sidighi, having been apprised of Plaintiff's medical condition, refused to allow him to be sent to the emergency room to obtain needed medical care.

Similarly, as to Dr. Sidighi's second argument, based on the allegations above, the Court cannot find Dr. Sidighi was unaware of a serious risk of harm to Plaintiff. Dr. Sidighi argues that because Plaintiff does not allege exactly what Nurse Sanchez told Dr. Sidighi about Plaintiff's condition, he has not sufficiently alleged Dr. Sidighi was aware of Plaintiff's serious medical need. However, Plaintiff has alleged Nurse Sanchez notified Dr. Sidighi of Plaintiff's condition. Plaintiff alleges Nurse Sanchez called Dr. Sidighi[11] to notify him "of the emergency and situation." (*Id.* at 14.) As to the specifics of Plaintiff's condition that she conveyed, the Court can reasonably infer that she told Dr. Sidighi that Plaintiff was in unbearable pain from an erection that had lasted multiple days[12] because Plaintiff indicates throughout all his interactions with prison staff that his chief symptom was a very painful erection that had lasted days.[13] (ECF No. 14, 20.) He

_____

[11] Although Plaintiff alleges Nurse Sanchez said she was going to "call the prison doctor to notify him of the emergency and situation," in the next sentence he alleges Nurse Sanchez called an spoke to Dr. Sidighi. (*Id.* at 14.)

[12] The Medical Slip, dated July 8, 2012, states that Plaintiff reported that he had suffered from an erection since July 5, 2012, and the notes on the Medical Slip seem to indicate he has had the problem for four days.

[13] Although the pain scale on the initial notes of the Medical Slip is not completed, the Court can infer that Plaintiff likely described his pain as severe. Plaintiff had submitted the Medical Slip, requested a paramedic at the law library based on the pain he was in, and Plaintiff's mental health doctor was concerned enough about Plaintiff's condition and

certainly conveyed this to Nurse Sanchez based on the allegations of the Complaint and his Medical Slip. In this respect, Plaintiff has sufficiently alleged that Dr. Sidighi was aware of Plaintiff's serious medical condition. *See Jett v. Penner,* 439 F.3d 1091, 1097 (reversing district court based on factual dispute as to whether doctor was aware of plaintiff's medical condition where doctor denied knowledge but plaintiff claimed to have sent him a letter describing the condition).

As to the third argument, Dr. Sidighi argues that he was not deliberately indifferent because he sent Plaintiff to an outside facility for further treatment each of the two times he saw Plaintiff. The Court would agree that Plaintiff has not pled Dr. Sidighi was deliberately indifferent to his serious medical need the two times Dr. Sidighi physically examined Plaintiff, however, as explained below, that does not mean he was not deliberately indifferent to Plaintiff serious medical need in delaying care.

It is accurate to say that, based on the allegations of the Complaint, each time Dr. Sidighi physically examined Plaintiff he did send him out for further treatment the same day. Although Plaintiff alleges that the first time Dr. Sidighi physically saw him he initially refused to send him to the emergency room, he did issue the order to send him. (*Id.* at 16.) Because this appears to have occurred within a single interaction, there is no deliberate indifference because there is no delay. As to the second time Dr. Sidighi saw Plaintiff, there may have been some delay, but, based on the allegations of the Complaint it was not lengthy. After Plaintiff was treated at the hospital and returned to the prison, his priapism returned and Plaintiff reported this to his mental health doctors. (*Id.* at 16.) Those doctors notified Dr. Sidighi who again initially refused to send Plaintiff back to the hospital, but then Plaintiff's "mental health doctors [] got on him of [sic] the emergency to send me back to the hospital and *a short time later* the mental health doctors returned to notify me that he was writing the order for custody to send me to ER." (*Id.* (emphasis

_____

his being visibly in pain that he contacted the medical staff himself. (ECF No. 1 at 10-11, 13, 20.)

added).)  Based on Plaintiff's characterization of it as a "short time," the Court cannot find this delay demonstrated deliberate indifference by Dr. Sidighi.  These brief delays, to the extent there was any, do not constitute deliberate indifference.

However, as discussed above, based on the allegations of the Complaint, Dr. Sidighi's first physical examination of Plaintiff was not when he first became aware of Plaintiff's serious medical need.  Dr. Sidighi was informed by Nurse Sanchez of Plaintiff's condition the day before Dr. Sidighi first physically examined Plaintiff and said Plaintiff would have to wait.  (*Id.* at 14.)  Plaintiff states that he was sent to crisis bed and seen by his mental health doctors the "following morning."  (*Id.* at 15.)  It is the delay from when Dr. Sidighi was allegedly told of Plaintiff's condition and Plaintiff was sent to the hospital for further care that is at issue.  In this respect, Dr. Sidighi is incorrect in arguing that he sent Plaintiff for outside care the same day Plaintiff first complained about his condition.

Here, Plaintiff alleges Dr. Sidighi was deliberately indifferent by delaying medical treatment.  As noted above, the Court must accept all the allegations of the Complaint as true, view those allegations in the light most favorable to Plaintiff, and construe those allegations liberally based on his *pro se* status. *Hebbe*, 627 F.3d at 340, 342.  Viewing the allegations in that light, the Court finds Plaintiff has plausibly alleged Dr. Sidighi was deliberately indifferent to his serious medical need by delaying medical care.  Although the Complaint alleges Dr. Sidighi did see Plaintiff and send him to the hospital in less than three days, it appears from the allegations of the Complaint that it was not until at least a day later[14] that Dr. Sidighi saw Plaintiff and sent him to the emergency room.  (*Id.*

---

[14] As noted throughout, the dates these events occurred is not entirely clear, but Plaintiff does state that he was seen by Nurse Sanchez with Dr. Sidighi refusing to send him out to the emergency room on one day and that he was not seen by Dr. Sidighi until the following day.  (ECF No. 1 at 14-15.)  He describes the pain becoming so unbearable he wanted to commit suicide, going to crisis bed on that basis, and seeing his mental health doctors the "following morning."  (*Id.* at 15.)  Those doctors seeing him and contacting Dr. Sidighi allegedly prompted Dr. Sidighi to see Plaintiff.

at 15.) "[M]ere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nevada Bd. of State Prison*, 766 F.2d 404, 407 (9th Cir. 1985) (citing *Estelle*, 429 U.S. at 106). However, Plaintiff has alleged sufficient harm from the delay. *See Estelle*, 429 U.S. at 106 (finding "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs). During this period of delay, Plaintiff was in such extreme pain that he wanted to commit suicide and was sent for mental health care as a result. (*Id.*) Additionally, he vaguely alleges he has suffered lifetime permanent injury. (*Id.* at 8.) Based on these allegations, Plaintiff has sufficiently alleged Dr. Sidighi was deliberately indifferent to a serious medical need by delaying medical treatment for a serious and painful medical condition.

Accordingly, the Court **RECOMMENDS** that the Motion to Dismiss Plaintiff's claim against Dr. Sidighi be **DENIED**.

## II. Leave to Amend Regarding Officer Laxamanna and Dr. Newton

Plaintiff seeks leave to amend to assert Eighth Amendment claims against Officer Laxamanna and Dr. Newton. (ECF No. 21.) The Court recommends leave to amend be granted as to Dr. Newton because the Plaintiff may be able to correct the defects in the Complaint as to him. The Court recommends leave to amend be denied as to Officer Laxamanna because the proposed amendment would be futile and Plaintiff will be unable to amend his claim as to Officer Laxamanna to state a claim without contradicting the allegations in the Complaint.

### A. Standard for Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely granted "when justice so requires." Courts consider five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *Johnson v. Buckley,* 356 F.3d 1067, 1077 (9th Cir. 2004). Here, there is no record of

delay, prejudice, bad faith, or previous amendments. Therefore, the only factor to consider is whether amendment would be futile.

Leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and Cnty. of San Francisco*, 656 F3d 1002, 1008 (9th Cir. 2011) (citing *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010)). However, if a plaintiff "may be able to amend [his] complaint to state a claim that will survive a motion to dismiss . . . denial of leave to amend on the ground of futility is improper." *Sonoma Cnty. Ass'n. of Retired Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013).

### B. Dr. Newton

As to Dr. Newton, Plaintiff seeks to further allege that Nurse Sanchez spoke to Dr. Newton about Plaintiff's condition and Dr. Newton "was one of the 3 Jane and John Does" that were mentioned in the Complaint. (ECF No. 21 at 3.) The Complaint alleges that three unknown nurses examined Plaintiff. (ECF No. 1 at 15.) Although, as previously noted the dates are not entirely clear, this examination would have been the day before he was first sent to the emergency room. (*Id.*) These individuals allegedly indicated they did not have authorization to send him to an outside emergency room and that Dr. Sidighi had stated he would see Plaintiff in three days. (*Id.*)

In seeking leave to amend, Plaintiff notes that Dr. Newton is listed on Plaintiff's California Department of Corrections and Rehabilitation ("CDCR") Form 7464 Triage & Treatment Services Flow Sheet ("Triage Sheet")[15] that indicates Plaintiff was suffering from "Priphrism." (ECF No. 21 at 4.) Plaintiff also seeks to allege that Dr. Newton had the authority to write an order for Plaintiff to be transported to the emergency room but refused to do so. (*Id*.) Similar to Plaintiff's claims against Dr. Sidighi, Plaintiff seeks to allege that Dr. Newton delayed Plaintiff's medical treatment for a serious medical need rising to the level of deliberate indifference. (*Id.*)

---

[15] The form is attached as part of Exhibit B to the original Complaint following the Medical Slip. (ECF No. 1 at 21-24)

Plaintiff's claims as to Dr. Newton may rise to the level of deliberate indifference because Plaintiff can allege that Dr. Newton was aware of his serious medical need and denied care. Although Plaintiff was sent to the emergency room the day after Dr. Newton allegedly physically examined him, Plaintiff can allege that he was denied care in the interim. The length of the delay may be slightly shorter than that asserted as to Dr. Sidighi, but it would have been at least from the afternoon of one day to the morning of the next. Notably, it was in this interim that Plaintiff was sent to "crisis bed" as a result of wanting to commit suicide from the extreme pain of his condition. (ECF No. 1 at 15.) Liberally construing Plaintiff's allegations, the Court cannot find amendment as to Dr. Newton would be futile. Given the other factors also weigh in favor of leave to amend, particularly having no previous attempts to amend, the Court **RECOMMENDS** Plaintiff's Motion for Leave to Amend be **GRANTED** as to Dr. Newton.

### C. Officer Laxamanna

The Order dismissing Officer Laxamanna pursuant to §§ 1915(e)(2) and 1915A explained that Plaintiff's only allegations as to Officer Laxamanna were that Plaintiff notified him that he was having a "medical emergency" while he was at the law library, Officer Laxamanna escorted Plaintiff back to his cell, and Officer Laxamanna notified the nurses on staff to come see Plaintiff. (ECF No. 14 at 8.)

In seeking leave to amend Plaintiff reiterates that Officer Laxamanna was deliberately indifferent to his serious medical need because he did not immediately summon a paramedic. (ECF No. 21 at 2; ECF No. 41 at 14.) As noted above, that is not a new allegation.[16] The screening Order indicates Officer Laxamanna's only obligation when Plaintiff notified Officer Laxamanna "that he was having a 'medical emergency'

---

[16] The only new allegations Plaintiff would assert as to this interaction are that a member of the law library staff observed Plaintiff in pain, inquired what was wrong, and called Officer Laxamanna at Plaintiff's request. (ECF No. 41 at 14.) This does not alter the analysis of whether Officer Laxamanna's response to Plaintiff's medical condition was deliberately indifferent.

while he was at the RJD law library" was to "notify[] RJD medical staff of Plaintiff's complaints." (ECF No. 14 at 8.) The Order goes on to conclude that Officer Laxamanna was not deliberately indifferent because the Complaint alleged that he did notify medical staff of Plaintiff's condition. (*Id.*) Although, as explained below, Plaintiff now alleges Officer Laxamanna did not notify medical staff of Plaintiff's complaint, Plaintiff also alleges that Officer Laxamanna knew the medical staff was aware of Plaintiff's condition and attempting to see him.

Plaintiff now seeks to clarify that he did not allege Officer Laxamanna notified the nurses of his condition and seeks to allege the opposite — that Officer Laxamanna did not notify the nurses of Plaintiff's condition.[17] (ECF No. 21 at 3.) He asserts that he was seen by Nurse Sanchez later that day because of his previously submitted Medical Slip, not because Officer Laxamanna notified them of his condition. (*Id.*) He emphasizes that his Complaint alleges that as he was being escorted to his cell he and Officer Laxamanna ran into Officer Alvarado, the unit's medical officer. (ECF No. 21 at 2; ECF 1 at 13.) She indicated that she had been looking for him to be seen by the nurses. (ECF No. 1 at 13.) Although she did not take him at the time because the nurse was out of the building, he was taken to see the nurse later by another officer. (*Id.*) He also seeks to add allegations that Nurse Sanchez indicated that she was seeing him in response to his Medical Slip. (ECF No. 21 at 3.) Plaintiff argues that Officer Alvarado's statement that she was already looking for him when Plaintiff was coming back with Officer Laxamanna shows that he was taken to see the nurses because of his Medical Slip, not as

---

[17] These allegations do not directly contradict the allegations of the Complaint. Plaintiff does not specifically allege Officer Laxamanna did or did not ask the nurses to see him in the Complaint. Plaintiff alleges that when Plaintiff told Officer Laxamanna that he needed to be sent to an outside emergency room, "Officer Laxamanna stated that he will escort me back to my cell and ask the ad-seg housing unit (Nurse Station) to see me." (ECF No. 1 at 13.) Because Plaintiff was seen later that day by Nurse Sanchez, it was not unreasonable to infer that Officer Laxamanna did notify the medical staff, but he did not specifically allege the nurses were notified by Officer Laxamanna.

a result of a request by Officer Laxamanna.  (ECF No. 21 at 3.)  The Court would agree this is a reasonable interpretation.  However, these same allegations undermine any deliberate indifference claim as to Officer Laxamanna.

Based on these allegations, Officer Laxamanna was notified not only that the medical staff was aware he needed to be seen, but also that the medical staff was already attempting to see him and he would be seen as soon as the nurse returned.  These allegations reflect the absence of deliberate indifference.  "A prison official is deliberately indifferent . . . if he 'knows of *and disregards* an excessive risk to inmate health.'"  *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837) (emphasis added).  Even assuming Officer Laxamanna was aware of an excessive risk to Plaintiff's health from his complaints at the law library, Plaintiff cannot plead Officer Laxamanna "disregard[ed] that risk by failing to take reasonable measures to abate it" when Officer Laxamanna knew the medical staff was already aware he needed to be seen and was attempting to see him.  *See Farmer*, 511 U.S. at 847.  The additional allegations Plaintiff proposes do not alter this conclusion because he continues to allege Officer Laxamanna was notified that the medical staff was attempting to see Plaintiff for his condition and he was going to be seen soon.  In this respect, the proposed amendment would be futile.

Plaintiff would also not be able to amend his allegations to contradict these allegations because "[a] party cannot amend pleadings to 'directly contradic[t] an earlier assertion made in the same proceeding.'"  *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)); *see also Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) (explaining an "amended complaint may only allege other facts consistent with the challenged pleading").

Based on the foregoing, the Court **RECOMMENDS** Plaintiff's Motion for Leave to Amend as to Officer Laxamanna be **DENIED**.

///

## III.    Miscellaneous Motions

### A.    Motion for Extension of Time (ECF No. 29)

On March 6, 2017, Plaintiff filed a document the Court construed as an Opposition to Defendant's Motion to Dismiss and a Motion for Extension of Time to file an Amended Complaint. (ECF No. 29.) The Court has considered his arguments in opposition to the Motion to Dismiss. As to the Motion for an Extension of Time, it is **DENIED** as moot because Plaintiff has filed and the Court has considered his Motion for Leave to Amend and all his filings in support of it.

### B.    Motion Requesting an Early Settlement Conference (ECF No. 31)

On March 6, 2017, Plaintiff also filed a Notice of Change of Address and a Motion Requesting an Early Settlement Conference. (ECF No. 31.) The Court **DENIES** the request for a settlement conference. Given the procedural posture of the case and Plaintiff's settlement demand, the Court finds a settlement conference is unlikely to be productive at this time.[18] Plaintiff's address was updated.[19]

### C.    Letter Requesting Excusable Neglect (ECF No. 33)

Plaintiff also filed a letter requesting a grant of Excusable Neglect on March 6, 2017. (ECF No. 33.) This appears to be related to Plaintiff not being able to timely file an Amended Complaint. As discussed above, the Court has considered Plaintiff's Motion for Leave to Amend and all subsequent filings in support. Thus, the Court **DENIES** Plaintiff's request for Excusable Neglect as moot.

///

///

---

[18] Pursuant to Civil Local Rule 16.1.e.8. Early Neutral Evaluation Conferences ("ENE") are generally not held in cases brought under 42 U.S.C. § 1983. However, the Court will consider whether an ENE is appropriate when the pleadings are settled.

[19] Plaintiff's address has since been updated to reflect his current incarceration at California State Prison – Lancaster.  (ECF No. 43.)

**D.  Motion for Amended Complaint (ECF No. 41)**

On June 7, 2017, Plaintiff filed a Motion for Amended Complaint.  (ECF No. 41.)  As discussed above, the Court has considered this filing in making a recommendation on Plaintiff's Motion for Leave to Amend.  Included at the conclusion of this filing is a document captioned Motion for Summary Judgment under Federal Rule of Civil Procedure 56.  (*Id.* at 33-36.)  Plaintiff seeks summary judgment because he attempted to settle his case for $500,000 without adding back additional defendants.  (*Id.* at 33.)  He then reduced his settlement offer to $350,000 and then $250,000.  (*Id.*)   He argues this is a very good offer as compared to the settlement a friend obtained.  (*Id.*)  Otherwise, Plaintiff generally asserts "there are no undisputed[sic] facts that defendants can dispute, they are responsible for Plaintiff's permanent damages."  (*Id.*)  He cites no evidence for these conclusions, as required by Rule 56(c).   And, Plaintiff has certainly not shown "that there is no genuine dispute as to any material fact and that [he] is entitled to judgment as a matter of law" as required for summary judgment under Federal Rule of Civil Procedure 56(a).  The Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**.

## CONCLUSION

Plaintiff's motions for extension of time, requesting an early settlement conference, and requesting excusable neglect are **DENIED** for the reasons stated above.  (ECF Nos. 29, 31, 33.)  Plaintiff's request that the Court consider his additional proposed allegations in support of leave to amend in lieu of filing a late Reply in support of his Motion for Leave to Amend is **GRANTED**.  (ECF No. 43.)

The Court submits this Report and Recommendation to United States District Judge Dana M. Sabraw.  For the reasons outlined above, the undersigned **RECOMMENDS** the following:

(1)    Dr. Sidighi's Motion to Dismiss (ECF No. 25) be **DENIED**,

(2)    Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 21) be **GRANTED** as to Dr. Newton and **DENIED** as to Officer Laxamanna, and

(3)    Plaintiff's Motion for Summary Judgment (ECF No. 41 at 33-36) be
**DENIED**.

IT IS HEREBY ORDERED that any party to this action may file written objections with the Court and serve a copy on all parties no later than **August 30, 2017**. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any Reply to the Objections shall be filed with the Court and served on all parties no later than **September 6, 2017**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  August 10, 2017

Hon. Bernard G. Skomal
United States Magistrate Judge

16cv2244 DMS (BGS)